# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| ROBERTA SLAAEN and JULIE HOAGLAN,<br><br>              Plaintiffs,<br><br>v.<br><br>SENIOR LIFESTYLE CORPORATION and SL GREENFIELD LLC,<br><br>              Defendants. | Case No. 18-CV-1562-JPS<br><br><br>**ORDER** |

**1.**     **INTRODUCTION**

Plaintiffs filed this action on October 3, 2018, alleging violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, and Wisconsin's Wage Payment and Collection Laws, Wis. Stat. § 109.01 *et seq.*, Wis. Stat. § 104.01 *et seq.*, Wis. Stat. § 103.001 *et seq.*, Wis. Admin. Code § DWD 274.01 *et seq.*, and Wis. Admin. Code § DWD 272.001 *et seq.* Plaintiffs seek to bring their FLSA claim on a class basis, which in the parlance of the FLSA is called a collective action. *See* 29 U.S.C. § 216(b). On February 23, 2019, they filed a motion for conditional certification of their FLSA claim as a collective action. (Docket #25). Defendants oppose conditional certification. (Docket #32). The motion is now fully briefed and, for the reasons explained below, conditional certification will be granted.

**2.**     **RELEVANT FACTS**

Defendant Senior Lifestyle Corporation ("SLC") operates numerous assisted living centers across the country. Plaintiffs worked at one such facility in Greenfield, known as "Hickory Park." Plaintiffs contend that SLC

failed to pay its employees, including Plaintiffs, at the proper rate when those employees worked overtime. Specifically, the FLSA requires employers to calculate overtime pay based on the employee's regular rate of pay. Plaintiffs maintain that SLC and its co-defendant, SL Greenfield LLC, paid certain non-discretionary bonuses to their employees at Hickory Park, but when it came time to pay those employees for overtime, the bonuses were not included in the employees' regular rate. Thus, the employees were shortchanged for their overtime.

Plaintiffs assert that this improper overtime policy is uniform across SLC's national operations. For support, Plaintiffs offer their own testimony about the practices at Hickory Park. They also offer the testimony of Mary Tasche, who worked at SLC's Sheboygan facility as the director of sales and marketing. According to Plaintiffs and Tasche, the bonuses for which they were not properly compensated included Tour Bonuses (or Marketing Bonuses), Move-In Bonuses, Resident Referral Bonuses, Shift Bonuses, Quarterly Net Gain Bonuses, and Quarterly Occupancy Bonuses.

As further support, Plaintiffs point to the testimony of Noel Pakulski ("Pakulski"), the executive director of Hickory Park, and Dave Richey ("Richey"), SLC's vice president of operations. According to Plaintiffs, Pakulski's testimony confirms that they were not properly paid with respect to the bonuses they earned at Hickory Park. As to SLC's national operations, Richey testified that the corporation's approach is to not pay overtime based on the employee's regular wages plus bonuses:

> If it's a bonus, it's a bonus. It's not part of the regular pay. . . . You've got a regular rate of pay that's -- your rate of pay is $11 an hour, that's your rate of pay. You work overtime, time and a half, you get time and a half on that. You do something outside of, you know, what your normal process

> is or you do something different, then there would be a bonus for that.
>
> . . .
>
> So your question, if I remember it, was should bonuses be part of regular pay and I don't – it's a bonus. It's not part of regular pay. So that's my statement. . . . If there's a bonus, it's a bonus. It's outside of normal pay.

(Docket #29-3 at 81–82, 85). Finally, Plaintiffs note that SLC maintains a "FLSA Overtime and Payroll Practices Policy" which is silent on the matter of properly computing bonuses into overtime pay. (Docket #29-2 at 121–22).

Defendants counter that each assisted living facility operates with relative independence. As Defendants describe it, the facilities are like franchises; each executive director runs their own facility as they see fit, and pays SLC for various support services, including human resources, marketing, and sales. Important to this case is the executive directors' freedom to set pay for their employees and determine bonuses. SLC offers various "standards" for certain bonuses, but these are mere suggestions for how a particular bonus should be structured. *See id.* at 123–28. SLC does not dictate what bonuses must be offered or how bonuses should be paid. Indeed, when told about the Tour Bonus policy at Hickory Park, Richey said that he was not aware that it was being offered. Plaintiffs rejoin that in her deposition, Pakulski indicated that bonuses over a certain dollar threshold would need approval from SLC.

3. ANALYSIS

   3.1 Conditional Certification

The FLSA requires that an employee be compensated with overtime pay "at a rate not less than one and one-half times" the employee's regular rate for hours worked in excess of forty in a week. 29 U.S.C. § 207(a). An

employee's "regular rate" includes "all remuneration for employment paid to . . . the employee," *id.* § 207(e), subject to eight statutory exemptions. *Cleveland v. City of Los Angeles*, 420 F.3d 981, 988 (9th Cir. 2005) (citing *Arnold v. Ben Kanowsky, Inc.*, 361 U.S. 388, 392 (1960)). The FLSA further provides that non-discretionary bonuses must normally be recomputed into an employee's regular rate before calculating her overtime compensation. 29 U.S.C. § 207(e)(3)(a); 29 C.F.R. § 778.211(c); *Gilbertson v. City of Sheboygan*, 165 F. Supp. 3d 742, 749–50 (E.D. Wis. 2016). Otherwise, an unscrupulous employer could take a portion of an employee's ordinary compensation, call it a "bonus," exclude it from the employee's regular rate, and thereby artificially deflate the employee's overtime rate of pay.

Conditional certification of a collective action is distinct from the procedure normally applied to class litigation under Federal Rule of Civil Procedure 23. *Woods v. N.Y. Life Ins. Co.*, 686 F.2d 578, 579–80 (7th Cir. 1982). It allows a court to conditionally certify a collective action under the FLSA so that notification to putative class members may be made, those putative class members may affirmatively opt in to the collective action, and class discovery may be taken. 29 U.S.C. § 216(b); *Woods*, 686 F.2d at 579–80. Once this is done, the plaintiff can move for final, full certification of the collective action. *Jirak v. Abbott Labs., Inc.*, 566 F. Supp. 2d 845, 848 (N.D. Ill. 2008). For the initial step of conditional certification, the plaintiff must only make "a minimal showing that others in the potential class are similarly situated," *Mielke v. Laidlaw Transit, Inc.*, 313 F. Supp. 2d 759, 762 (N.D. Ill. 2004), which requires no more than "substantial allegations that the putative class members were together the victims of a single decision, policy, or plan," *Thiessen v. Gen. Elec. Capital Corp.*, 267 F.3d 1095, 1102 (10th Cir. 2001).

Plaintiffs' allegations satisfy this lenient standard as against the applicable law. They assert that Defendants have a general practice of failing to include non-discretionary bonuses in employees' regular rates of pay when calculating overtime pay. (Docket #1). Plaintiffs have bolstered their allegations with at least a modest factual underpinning via testimony from Pakulski and Richey, as well as the FLSA policy maintained by SLC. This evidence suggests that the allegedly wrongful overtime payment practice applies to all SLC facilities across the country.

Defendants offer two counterarguments, both of which lack merit. First, they maintain that because each facility determines its own bonus policies, the bonuses Plaintiffs received may not even be offered at other facilities. In Defendants' view, the wide variation in bonus practices means that the employees of different facilities cannot be similarly situated for purposes of Plaintiffs' proposed collective. Defendants misunderstand the focus of this case, which is not on the receipt of any particular bonus, but instead whether the non-discretionary bonuses which Defendants' employees received were properly accounted for in determining overtime. Conditional certification will permit Plaintiffs to explore which non-discretionary bonuses were provided to employees at the various SLC facilities. They can also obtain more precise information on how bonuses were (or were not) recomputed into the overtime calculation. As this Court observed not long ago in deciding another motion for conditional certification, though "bonus plans were slightly different at different facilities[,] . . . whether this is a fatal defect in the collective action, . . . or simply a question of differing damages calculations, . . . is a question that can be reserved for the final certification phase." *Weninger v. Gen. Mills Operations LLC*, 344 F. Supp. 3d 1005, 1013 (E.D. Wis. 2018).

Second, Defendants question whether Plaintiffs have marshalled adequate evidence of any unlawful payment practice, much less one applied to all employees. They imply that the bonuses at certain facilities may fall within an exemption from the "regular rate" determination. Further, even for non-exempt bonuses, Defendants assert that Plaintiffs lack evidence of a failure to properly pay overtime on a widespread basis, beyond Plaintiffs' own experiences. The Court finds that Plaintiffs' allegations and evidence, particularly Richey's statement suggesting a universal policy with respect to including bonuses in employees' regular rates, passes the low bar required for conditional certification. Additionally, the employer bears the burden of establishing that a payment is exempt from the regular rate. *Idaho Sheet Metal Works, Inc. v. Wirtz*, 383 U.S. 190, 209 (1966). "FLSA exemptions are to be narrowly construed against . . . employers and are to be withheld except as to persons plainly and unmistakably within their terms and spirit." *Klem v. Cty. of Santa Clara, Cal.*, 208 F.3d 1085, 1089 (9th Cir. 2000). Defendants arguments are, therefore, premature. Whether an exemption applies must be left for a later time.[1]

The Court recognizes that Plaintiffs appear to have little to go on at this point; Richey's statement about bonuses is not terribly precise, the FLSA policy is brief, and Plaintiffs offer little about what other facilities do with respect to bonuses and overtime pay. Nevertheless, the Court is satisfied by Plaintiffs' substantial allegations of similarity between themselves and the proposed collective. Whether they are truly similar will be answered during the final certification process. The Court will, therefore,

---

[1]The parties also bicker over whether SLC is a joint employer, and thus the proper subject of FLSA liability, with its current co-defendant or any of the other facilities. This too is a matter best left for dispositive motion practice.

grant Plaintiffs' motion for conditional certification of their proposed collective action.

### 3.2 Collective Action Scope and Notice

The Court has discretion to prescribe the form, manner, and timing of notice to ensure that putative collective members receive "accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions about whether to participate." *See Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 170, 172 (1989). Plaintiffs propose the following collective:

> All current and former hourly-paid, non-exempt employees employed by Defendants within the three (3) years prior to this action's filing who have not been compensated for all hours worked in excess of forty (40) hours in a workweek at the proper, correct, and/or lawful overtime rate of pay as a result of Defendants' failure to include all non-discretionary compensation, such as Tour Bonuses (or Marketing Bonuses); Move-In Bonuses; Resident Referral Bonuses; Shift Bonuses; Quarterly Net Gain Bonuses and Quarterly Occupancy Bonuses, in said employees' regular rates of pay for overtime calculation purposes.

(Docket #26 at 1–2). Plaintiffs have also provided a proposed notice to be sent to the putative class members. (Docket #26-1). Plaintiffs ask that the Court order Defendants to post the notice in their facilities, and disclose the names of potential collective members, within ten days. They further request a forty-five day opt-in period. After the period closes, and in accordance with the Court's dispositive motion deadline, Plaintiffs will file a motion for final certification of the collective action.

Defendants offer a number of complaints about the collective definition. First, they argue that the definition is overbroad because it covers bonuses not identified by Plaintiffs. But as explained above, the

identified bonuses are merely examples, not the thrust of Plaintiffs' case. Second, and similarly, Defendants want the collective limited to the Greenfield and Sheboygan locations, as those are the facilities for which Plaintiffs have evidence of wrongful conduct. However, Plaintiffs are entitled to conduct discovery regarding the bonus practices at other facilities, and in particular whether *any* facility pays non-discretionary bonuses which are not included in that facility's employees' regular rates of pay for overtime calculations.

Defendants also dislike the proposed notice. It describes only Plaintiffs' claims in the matter, not Defendants' defenses. The notice also fails to explain that collective members may be required to participate in discovery and trial. Finally, the notice does not inform recipients that they may retain counsel other than Plaintiffs' counsel, should they desire it. Plaintiffs do not meaningfully respond to these contentions. (Docket #35 at 10–11). The Court agrees with Defendants' suggestion that the parties should confer about the proper form of notice for the collective. If they cannot reach an agreement (which seems unlikely in light of the minor issues Defendants raise), the parties should each submit a proposed notice and a memorandum of law, not to exceed ten pages, supporting their desired notice. The Court will then determine the appropriate language for the notice. The parties' memoranda, or a stipulation as to the form of the notice, shall be due within ten days of the date of this Order.

Finally, in light of the volume of information they will need to gather, Defendants desire thirty days to post the approved notice and produce the names of potential collective members. The Court will grant Defendants' request and issue an amended trial scheduling order which provides sufficient time to complete the notice and opt-in process. The

motion for final collective action certification should be filed on or before the new dispositive motion deadline. The amended trial scheduling order will be issued after any disagreements about the notice have been resolved.

4. **CONCLUSION**

For the reasons stated above, the Court will grant Plaintiffs' motion for conditional certification. The Court will also grant the parties' motions to seal various exhibits attached to their motion briefing. (Docket #30 and #34).

Accordingly,

**IT IS ORDERED** that Plaintiffs' motion for conditional certification of their FLSA collective action (Docket #25) be and the same is hereby **GRANTED**;

**IT IS FURTHER ORDERED** that the parties' motions to seal/restrict (Docket #30 and #34) be and the same are hereby **GRANTED**; and

**IT IS FURTHER ORDERED** that the parties shall confer on the proper form of the notice, and file a stipulation or briefs on the matter if necessary, as directed in this Order.

Dated at Milwaukee, Wisconsin, this 9th day of April, 2019.

BY THE COURT:

J.P. Stadtmueller
U.S. District Judge